UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S & J RENTALS, INC. d/b/a TWIN CITIES EQUIPMENT RENTALS, a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HILTI, INC., an Oklahoma corporation,<br><br>Defendant. | No. 2:17-cv-01492-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

S&J Rentals, Inc., ("S&J") seeks redress on behalf of both itself and a putative class from Hilti, Inc. ("Hilti") for alleged illegal business practices. S&J's First Amended Complaint ("FAC") sets forth a single cause of action alleging that Defendant violated California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200–17204. ECF No. 4, at 9–10. Currently before the Court is Hilti's Renewed Motion to Dismiss S&J's case under the doctrine of forum non conveniens or, in the alternative, to strike S&J's request for a jury trial.[1] Hilti's Motion is predicated upon the forum selection and choice of law clauses contained within credit applications submitted

---

[1] The Court notes that Hilti's Notice of Motion refers mistakenly to the Motion to Transfer already adjudicated. The Court will construe the Notice as consistent with the relief sought in Hilti's supporting Points and Authorities.

1

to Hilti by S&J. In opposition, S&J urges the Court to refrain from enforcing these clauses on the grounds that doing so contravenes California's public policy of affording its citizens effective class action remedies. According to S&J, such remedies are not available in Oklahoma, the designated forum. For the reasons set forth below, Hilti's motion is GRANTED.[2]

## BACKGROUND

S&J is a California corporation that rents construction equipment to the public.[3] Hilti, an Oklahoma corporation with its headquarters in Texas, develops, manufactures, and markets products for construction, building maintenance, and mining. Specifically, Hilti is the U.S. distributor for the TE 3000-AVR breakers, hand-guided electric tools that are used for chiseling concrete, masonry, asphalt, and other excavation work.

In 2008 and 2010, S&J contracted with Hilti to open a line of credit to facilitate the purchase of new power tools and other related equipment. Two agreements in that regard were executed. For both, S&J signed and submitted to Hilti credit applications (Credit Applications), the signature lines of which stated the following:

> IN CONSIDERATION OF HILTI'S GRANTING OF CREDIT, APPLICANT AND PERSONAL GUARANTOR ("CUSTOMER"), HEREBY AGREE THAT ALL TRANSACTIONS MADE PURSUANT HERETO SHALL BE GOVERNED BY HILTI'S STANDARD TERMS AND CONDITIONS OF SALE PRINTED ON THE REVERSE SIDE HEREOF.

Def.'s Mot. Dism., ECF No. 49-1, 4:13–16. In addition, the "CONSENT TO JURISDICTION" section of the Credit Applications' Terms and Conditions provided:

///
///

---

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[3] Unless otherwise noted, the facts are taken from the parties' pleadings.

> All transactions made pursuant hereto shall be deemed to have been made and entered into in Tulsa, Oklahoma. Any and all disputes arising directly or indirectly from such transactions shall be resolved in the courts of the County of Tulsa, State of Oklahoma, to the exclusion of another court, and any resulting judgment may be enforced by any court having jurisdiction of such an action. All transactions shall be governed by and construed in accordance with the laws of the State of Oklahoma.

Id. at 4:23–27.

S&J subsequently made several tool purchases using the line of credit, one of which was for a TE 3000-AVR breaker chiseling tool in 2012. S&J alleges that it did not know when it purchased products from Hilti that the products were equipped with a "pre-programmed 'automatic shut off' function that causes [them] to shut down after a specified number of operational hours." Pl.'s Opp. Mot. Dism., ECF No. 57, 2:11–12. According to S&J, to reactivate the tools, Hilti's customers must send them back to Hilti and pay a servicing fee, which S&J alleges is required regardless of whether the tools actually need any maintenance, repair, or servicing. S&J alleges that Hilti failed to adequately disclose this process to its consumers, and that such failure constitutes an unfair business practice under the UCL.

S&J filed its FAC on May 9, 2016. On June 21, 2016, Hilti filed a motion in which it sought to enforce the parties' forum section clause and have the case transferred to the District Court for the Northern District of Oklahoma. Hilti also moved to dismiss the action or, in the alternative, to strike S&J's jury demand. The parties briefed the issues raised in Hilti's motion, focusing primarily on whether the case should be transferred. Although S&J did contend in a footnote that the forum selection clause referred to Oklahoma state courts, it did not argue the motion to transfer should be denied on that basis. Instead, S&J argued that the forum selection clause was unenforceable because it would contravene a strong public policy of California. According to S&J, enforcing the forum selection clause would contravene California's public policy of ensuring its citizens have access to class action suits because: (1) Oklahoma's consumer protection statute had no extraterritorial effect; and (2) S&J would not be able to attain class status under

Oklahoma's class action statute. Hilti, on the other hand, argued that the forum selection clause did not limit S&J to Oklahoma state court, and claimed that since S&J could bring its suit in a federal court in Oklahoma under Federal Rule of Civil Procedure 23, enforcing the forum selection clause did not contravene California's public policy in favor of class actions.

Ultimately, this Court agreed with Hilti and granted the motion to transfer to the Northern District of Oklahoma. The district judge assigned to the case, however, subsequently issued an Order to Show Cause questioning the propriety of transfer to that district.[4] Following the parties' briefing on that issue, the court directed that the case be transferred back to this Court to reconsider whether Hilti's "motion to transfer should have been denied or whether the case should have been dismissed under forum non conveniens." Order, ECF No. 44, 9–10.

The Northern District correctly noted that the unavailability of a federal forum in Oklahoma changes the degree to which California's interests are implicated, and, consequently, this Court's analysis of whether enforcing the forum selection and choice of law clause contravenes a public policy of California. Following transfer of the case back to this Court, Hilti refiled its motion to dismiss, and that motion is currently before the Court for adjudication. Hilti argues that enforcing the contract still does not contravene a public policy of California and seeks dismissal on forum non conveniens grounds. Alternatively, Hilti moves to strike S&J's jury request pursuant to Federal Rule of Civil Procedure 12(f). S&J, on the other hand, argues that Oklahoma consumer protection and class action statutes preclude it from bringing its suit in Oklahoma state court, thereby contravening California's public policy in favor of ensuring that its citizens have effective class action remedies.

///

---

[4] The Court notes that Hilti filed a Request for Judicial Notice as to the Order to Show Cause and other documents already docketed in this matter. Although judicial notice is not necessary as to the contents of the Court's own file, the Request for Judicial Notice was unopposed and is therefore GRANTED.

# STANDARD

### A. Federal Rule of Civil Procedure 12(b)(3)

Rule 12(b)(3) and 28 U.S.C. § 1406(a) authorize the Court to dismiss an action on grounds that venue is improper. A motion to dismiss under Rule 12(b)(3) is the proper means for enforcing a contractual forum selection clause. Argueta v. Banco Mexicano, F.A., 87 F.3d 320, 324 (9th Cir. 1996). Unlike a motion to dismiss for failure to state a viable claim under Rule 12(b)(6), on a motion for improper venue under Rule 12(b)(3), "the pleadings need not be accepted as true and the [C]ourt may consider supplemental written materials and consider facts outside the pleadings" in its adjudication. Kelly v. Qualitest Pharm., Inc., No. CIV-F-06-116 AWI LJO, 2006 WL 2536627, at *7 (E.D. Cal. Aug. 31, 2006) (citing Murphy v. Scheider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004)); Argueta, 87 F.3d at 324. If the Court determines that venue is improper, it may dismiss the case, or, if the interests of justice so require, the Court may transfer the case to any district in which it properly could have been brought. 28 U.S.C. § 1406(a); Dist. No. 1, Pac. Coast Dist., M.E.B.A. v. Alaska, 682 F.2d 797, 799 (9th Cir. 1982). The decision to transfer rests in the Court's discretion. 28 U.S.C. § 1404(b); King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992).

### B. Forum Non Conveniens

Under 28 U.S.C. § 1391(b), venue is proper (1) in a judicial district in which any defendant resides; (2) in a judicial district in which a substantial part of the events giving rise to the claim occurred; or (3) if no judicial district is otherwise appropriate, in any judicial district in which any defendant is subject to the court's personal jurisdiction. Even where venue is proper under § 1391(b), however, a defendant may still move to dismiss the case if a forum selection clause points towards another court. Atlantic Marine Constr. Co., v. U.W. Dist. Court for Western Dist. Of Texas, 134 S. Ct. 568, 579 (2013). In that circumstance, the proper motion is one for forum non conveniens.

///

Id. at 580 ("[T]he appropriate way to enforce a forum-selection clause pointing to a state . . . forum is through the doctrine of forum non conveniens.").

In evaluating a motion for forum non conveniens, a court must first determine whether the relevant forum selection clause is valid under federal law. Doe 1 v. AOL, LLC, 552 F.3d 1077, 1083 (9th Cir. 2009); TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1353 (9th Cir. 1990). In the Ninth Circuit, forum selection clauses are presumptively valid, and are only unenforceable if the "party challenging enforcement . . . can show it is unreasonable under the circumstances." Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)). The party challenging a forum selection clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable. M/S Bremen, 407 U.S. at 17.

"The Supreme Court has construed this exception narrowly," with unreasonableness being shown only if: (1) the clause was the result of fraud, undue influence, or overweening bargaining power; (2) the transferee forum "is so gravely difficult and inconvenient" that plaintiff would essentially be denied its day in court; or (3) "enforcement of the clause would contravene a strong public policy of California." Id.

If none of the "unreasonableness" exceptions apply, the forum selection clause is deemed prima facie valid. District courts must then analyze the clause(s) at issue under § 1404(a) to determine whether public-interest factors weigh against dismissing the case. These public interest factors include "[(1)] the administrative difficulties flowing from court congestion; [(2)] the local interest in having localized controversies decided at home; [and (3)] the interest in having the trial of a diversity case in a forum that is at home with the law." Atl. Marine, 134 S. Ct. at 581 n.6. In analyzing these factors, the Court must ensure that: (1) the plaintiff's choice of forum is given no weight; (2) only "public-interest" factors are considered, not the parties' private interests; and (3) the original venue's choice-of-law rules do not "follow the case to the forum contractually selected by the parties." Id. at 581–83. The forum selection clause should control

6

unless "extraordinary circumstances unrelated to the convenience of the parties" clearly disfavors transfer.  Id. at 581.  Because of this presumption and the heavy burden born by the party challenging the forum selection clause, these factors rarely prevail.

## ANALYSIS

### A. Hilti Did Not Waive Its Right to Enforce the Forum Selection and Choice of Law Clauses When It Previously Argued for Transfer to the Northern District of Oklahoma

S&J argues that Hilti waived its right to assert that the case should be refiled in Oklahoma state court pursuant to the forum selection clause because it sought transfer to the Northern District of Oklahoma.  While it is true that a forum selection clause is waived where the party invoking it has taken actions inconsistent with it, or delayed its enforcement, and enforcement would prejudice other parties, Wachovia Bank Nat. Ass'n v. EnCap Golf Holdings, LLC, 690 F. Supp. 2d 311, 328 (S.D.N.Y. 2010), Hilti has not acted inconsistently with the forum selection clause at issue here.  On the contrary, Hilti's sole actions with respect to the forum selection clause have been to enforce the clause.  Although Hilti successfully advocated that the forum selection clause contemplated either federal or state courts in Tulsa, Oklahoma, the fact that venue in Oklahoma's federal court was ultimately deemed improper does not preclude Hilti from asserting the correct interpretation of the clause now.

### B. Hilti Is Not Judicially Estopped from Asserting the Forum Selection and Choice of Law Clauses As Grounds for Dismissal under Forum Non Conveniens

S&J also argues that Hilti is judicially estopped from asserting that the suit must be brought in state court after previously asserting that the proper forum was federal court.  The doctrine of judicial estoppel prevents a party from taking a position that is inconsistent with or contradictory to a prior position such that it would be an affront to the court. Am. Booksellers Ass'n v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031, 1046 (N.D. Cal. 2001) (quoting Wyler Summit P'ship v. Turner Broad. Sys., Inc., 235 F.3d 1184,

1190 (9th Cir. 2000)). The doctrine requires "(1) acts, statements, or admissions inconsistent with a claim subsequently asserted, (2) action or change of position on the part of the other party in reliance upon such acts, statements, or admissions, and (3) a resulting injustice to such other party, if the first party is allowed to contradict or repudiate his former acts, statements or admissions." Martin Marietta Aluminum, Inc. v. Gen. Elec. Co., 586 F.2d 143, 147 (9th Cir. 1978).

S&J's argument fails the first requirement under Martin Marietta. It is true that Hilti argued previously that the case could be brought in either federal or state court and that it is now arguing the case must be brought in Oklahoma state court. The difference between these two positions, however, is not the kind of inconsistency or contradiction the doctrine of judicial estoppel is meant to prevent. Although the two positions may appear facially inconsistent, they are nonetheless generally consistent in that both positions are efforts to enforce the forum selection clause. Moreover, the reason for Hilti's shift in position was the Northern District of Oklahoma's ruling. That Hilti's first attempt to enforce the clause was predicated on a flawed interpretation thereof does not preclude another attempt that is predicated on the correct interpretation. In light of the Northern District of Oklahoma's ruling that the forum selection clause refers only to Oklahoma state court, Hilti is not judicially estopped from advocating for the enforcement of the forum selection clause as interpreted by that court.

  **C.**  **It Is Not Unreasonable to Enforce the Forum Selection and Choice of Law Clauses Contracted for Because Doing So Does Not Contravene a Strong Public Policy of California**

Hilti moves to dismiss this case, or, in the alternative, strike S&J's request for a jury trial, because of the forum selection and choice of law clauses agreed to by the parties. S&J contends that enforcing the forum selection and choice of law clauses in this context contravenes a strong public policy of California. The state of California does indeed have a strong public policy in favor of "[a]ffording its citizens effective consumer class-action remedies." Van Slyke v. Capital One Bank, 503 F. Supp. 2d 1353, 1361

///

(N.D. Cal. 2007). The question, therefore, is whether enforcing the forum selection and choice of law clauses here contravenes that public policy.

Hilti contends that where a valid choice of law provision mandates application of the law of another state, a plaintiff's claim under the UCL must be dismissed. For this proposition, Hilti cites Medimatch, Inc. v. Lucent Tech., Inc., 120 F. Supp. 2d 842 (N.D. Cal. 2000). Specifically, Hilti relies on the Medimatch court's statement that "the mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law." Id. at 862. S&J, however, is correct to point out that such a statement of the law, although technically true, is incomplete. It is true that the mere fact that the chosen law provides lesser protection than California is not in and of itself sufficient reason to apply California law. In other words, the mere fact that Oklahoma law provides lesser protection than California does not necessarily contravene California law. But if the difference in protection is such that applying the chosen law contravenes a public policy of California, then that contravention is sufficient reason to apply California law under Argueta and M/S Bremen. Accordingly, the Court's inquiry must focus not on whether there is merely a difference in the laws of California and Oklahoma, but on whether that difference contravenes a public policy of California.

Plaintiffs argue that enforcing the contracted-for forum selection and choice of law clauses would contravene California's public policy of affording its citizens effective class action remedies because: (1) the Oklahoma Consumer Protection Act ("OCPA") has no extraterritorial effect; and (2) that under 12 Okla. Ann. Stat. § 2023(D)(3), judges may limit class membership to (a) residents of Oklahoma or (b) nonresidents who "have a significant portion of the non-resident's cause of action arising from conduct occurring" in Oklahoma.

As to the first ground, S&J cites Steinbeck v. Dollar Thrifty Auto. Grp., Inc., No. 08-CV00378-CVE-PJC, 2008 U.S. Dist. LEXIS 69692, at *8–9 (N.D. Okla. Sept. 15,

2008) and <u>Sallee v. Dollar Thrifty Auto. Grp., Inc.</u>, No. 14-CV-250-GKF-PJC, 2015 U.S. Dist. LEXIS 34913, at *20–21 (N.D. Okla. Mar. 20, 2015) for the proposition that the OCPA has no extraterritorial effect. Hilti does not appear to dispute that the OCPA has no extraterritorial effect. Both cases cited by S&J do indeed indicate that the OCPA does not apply to conduct that took place in other states even if the governing contract has a choice of law clause designating Oklahoma law as the controlling law. Nonetheless, there is an important difference between those cases and the facts here. In the present matter, each of the Credit Applications signed by the parties explicitly state that all transactions made pursuant to it were deemed to have been made in Tulsa, Oklahoma. Neither case cited by S&J appears to have addressed a contract that included such a clause. Therefore, it remains unclear how Oklahoma courts would apply the OCPA to the instant case. In other words, it is not clear that Oklahoma courts would rule the OCPA inapplicable on the facts presented by this particular matter.

As to S&J's second rationale against enforcing the forum selection clause, Hilti presents a number of arguments that this Court finds persuasive. First, § 2023(D)(3) is permissive. Judges "may" limit the class to the two categories of people enumerated, but they are not required to. That the statute is permissive proves that enforcing the forum selection and choice of law clauses would not necessarily preclude Plaintiff from bringing its claim in Oklahoma state court. It cannot, therefore, be said that enforcing the forum selection and choice of law clauses would clearly contravene California's public policy in favor of class action remedies. Second, even if a judge were to limit the class pursuant to § 2023(D)(3), there is a good argument that Plaintiff would still qualify under the statute. As stated above, the Credit Applications explicitly state that all transactions made pursuant to the contract are deemed to have been made in Tulsa, Oklahoma. Such an agreement arguably means that Plaintiff "ha[s] a significant portion of [its] cause of action arising from conduct occurring" in Oklahoma.

Plaintiff argues that the district court for the Northern District of Oklahoma explicitly held the opposite and that Plaintiff would be unable to pursue a class action in

10

Oklahoma. Pl.'s Opp. to Mot. to Dism., ECF No. 57, 12:26–28. They quote the following language from the court's order:

> The analysis of whether the forum selection clause contravenes a strong public policy of California <u>changes</u> if the case were in Oklahoma state court versus federal court in Oklahoma, because Oklahoma limits class membership to residents of Oklahoma and nonresidents who either own property in Oklahoma or have a significant portion of their cause of action arise from conduct occurring within Oklahoma . . . plaintiff would be unable to bring a class action in Oklahoma state court . . . California has a public policy that strongly favors class actions, <u>AOL</u>, 552 F.3d at 1083, and therefore, the degree to which California's interests are implicated in this case <u>changes</u> depending on whether a federal forum is available.

Pl.'s Opp. to Mot. to Dism., ECF No. 57, 12:26–13:7 (quoting Northern District's Order, ECF No. 44, 7–8) (emphasis in the original). But Plaintiffs conveniently omitted the premises on which the Northern District of Oklahoma based the statement "plaintiff would be unable to bring a class action in Oklahoma state court." The order actually provides: "<u>As a California resident with no property in Oklahoma asserting a claim based on conduct that occurred entirely in California</u>, plaintiff would be unable to bring a class action in Oklahoma state court." Order, ECF No. 44, 7–8 (emphasis added). On those premises, the Northern District of Oklahoma is correct. As stated above, however, it remains unclear whether the facts here present a situation where the conduct forming the basis for the cause of action occurred entirely in California because the Credit Applications explicitly state that the transactions are deemed to have been made in Tulsa, Oklahoma. Moreover, the Northern District of Oklahoma went on to note that it "offer[ed] no opinion on whether this distinction would be dispositive . . . ." <u>Id.</u>

It is true that there is some possibility that an Oklahoma state court judge could decide to limit the class to residents, or, in the event the judge limited the class to non-residents whose causes of action arose from conduct occurring in Oklahoma, decide that the statement in the Credit Agreements was insufficient to put S&J within that category. The fact that such a decision merely could occur, however, does not necessarily mean holding S&J to the contract they bargained for contravenes California public policy. On

11

the contrary, that it is merely possible suggests to this Court that S&J has not met its heavy burden of proving that enforcement is clearly unreasonable.

Relying on Harvell v. Goodyear Tire and Rubber Co., 164 P.3d 1028, 1073 (Okla. 2006), S&J attempts to skirt this rationale by arguing that the appropriate inquiry in deciding the applicability of a state's consumer protection statute is whether the transaction actually occurred in that state. But in Harvell, the Oklahoma Supreme Court was addressing the applicability of the Ohio Consumer Sales Practices Act to alleged violations occurring outside of Oklahoma where the suit was brought in Oklahoma. The Court held that under those circumstances the Act did not. Had Plaintiffs filed their complaint in California under Oklahoma law, an analogy to Harvell would be more apt. They did not. Moreover, the same grounds that distinguish this case from Steinbeck and Sallee distinguish this case from Harvell: there does not appear to have been a clause in the receipt at issue there that deemed the transactions to have been made in Oklahoma. Finally, the issue before this Court is not how Oklahoma treats the consumer protection laws of other states, which is what Harvell dealt with, but how the laws in Oklahoma affect this Court's analysis of whether sending Plaintiff to Oklahoma contravenes a California public policy. In sum, Harvell does not convince this Court that enforcing the forum selection and choice of law clauses that the parties here contracted for contravenes a strong public policy of California.

S&J also argues that because a federal forum is not available, its case now aligns with Doe 1 v. AOL LLC, 552 F.3d 1077 (9th Cir. 2009). In AOL, the court held AOL's forum selection clause, which designated Virginia state courts as the venue, was not enforceable on the grounds that it violated California public policy because (1) consumer class actions are not available in Virginia state courts and (2) enforcement of the forum selection clause would amount to waiver of rights under the Consumer Legal Remedies Act ("CLRA"), which contained an anti-waiver provision. Id. at 1083–84. Importantly, in articulating those grounds for concluding that the forum selection clause was not enforceable, the Ninth Circuit relied heavily on America Online, Inc. v. Superior Court of

Alameda Cty. (Mendoza), 90 Cal. App. 4th 1 (Cal. Ct. App. 2001), which interpreted the very same forum selection clause at issue in AOL on facts nearly identical to those presented in AOL. Such analogous precedent is lacking here. As stated above, class actions are arguably available in Oklahoma state courts, and even if there is no Oklahoma equivalent to the UCL, there is no anti-waiver clause in the UCL like there is in the CLRA that could be violated by enforcing the forum selection and choice of law clauses. It is true that this Court previously distinguished AOL on the grounds that S&J could pursue its claims in federal court. That is now not the case, but AOL is nonetheless distinguishable for the reasons stated above.

Additionally, although S&J is correct to point out that Van Slyke holds that affording its citizens effective class action remedies is a strong public policy of California, there are factual differences between Van Slyke and the present case sufficient to warrant a different outcome. Van Slyke involved oppressive adhesion contracts between a large bank and individual credit card consumers. Hilti, attempting to distinguish Van Slyke, argues that S&J is not a consumer. S&J contests this position, arguing that its status as a small business does not preclude it from being a consumer. Although the Court agrees with S&J that a small business can still technically be a consumer in that it can function as a patron or customer of another business, it is clear that S&J is not the same kind of consumer meant to be protected by the policy enumerated in Van Slyke. S&J is not an individual person dealing with a take-it-or-leave-it contract with a large bank. On the contrary, S&J is a corporation, albeit a small one, that deals with both the public and other businesses. In the same way that S&J's status as a small business does not preclude it from being a consumer neither does such status preclude it from being a sophisticated commercial party. Indeed, S&J deals with complex tools and equipment used in a variety of industrial contexts. Therefore, S&J is relatively sophisticated compared to the individual consumers in Van Slyke, and that difference undercuts the consumer protection rationale articulated in Van Slyke enough to compel a different conclusion.

In sum, the plain language of § 2023(D)(3) is sufficient to preclude this Court from concluding that enforcing the agreed upon forum selection and choice of law clauses, which require them to bring the case in Oklahoma state court under Oklahoma law, contravenes a strong public policy of California. As stated above, S&J bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable." M/S Bremen, 407 U.S. at 17. Because there is a legitimate possibility that S&J qualifies under relevant Oklahoma law, and because the rationale buttressing Van Slyke appears distinguishable from the facts before this Court, it is by no means clear that enforcing the forum selection and choice of law clauses contravenes a strong public policy of California. Because S&J has not met its burden in that regard, enforcing the contract as agreed by the parties is not unreasonable.

### D. The Public-Interest Factors Favor Dismissal

Having concluded that it is not unreasonable to enforce the forum selection and choice of law clauses, the Court must now consider whether public interest factors weigh against dismissal. As stated above, the public-interest factors include "[(1)] the administrative difficulties flowing from court congestion; [(2)] the local interest in having localized controversies decided at home; [and (3)] the interest in having the trial of a diversity case in a forum that is at home with the law." Atl. Marine, 134 S. Ct. at 581 n.6. In analyzing those factors, the Court must ensure that: (1) the plaintiff's choice of forum is given no weight; (2) only "public-interest" factors are considered, not the parties' private interests; and (3) the original venue's choice-of-law rules do not "follow the case to the forum contractually selected by the parties." Id. at 581–83.

The first factor favors Defendant and dismissal because the Eastern District of California is one of the busiest courts in the nation. The second factor, on the other hand, seems to favor Plaintiff because the actual sale of the tools at issue allegedly took place in California. Nonetheless, the extent to which this factor favors Plaintiff is, presumably, limited by the extent to which the class will eventually be comprised of members across the nation. Finally, the third factor favors Defendant and dismissal

14

because, pursuant to the choice of law clause in the Credit Applications, determining which state's substantive law applies to this matter depends on the application of Oklahoma's choice of law rules.

The single factor favoring Plaintiff's position is simply insufficient to constitute the "extraordinary circumstance" necessary to refrain from enforcing the forum selection and choice of law clauses the parties contracted for. Here, the presumption that forum selection and choice of law clauses should control prevails.[5]

### E. Freedom of Contract

Although the Court is satisfied that its analysis within the framework outlined above is sufficient in itself to justify this decision, there is another principle implicated by facts like those here that is worth noting: freedom of contract. Even if it was perfectly clear, contrary to the Court's findings above, that there was no chance that Plaintiff would be able to bring a case in Oklahoma, this Court would still be inclined to find that enforcing the forum selection and choice of law clauses does not necessarily contravene California's public policy of affording its citizens effective class action remedies. First, as stated above, the consumer protection rationale enumerated in Van Slyke, in which the plaintiffs were individual credit card customers who signed oppressive adhesion contracts, is undercut in this context because S&J is a relatively sophisticated entity. In addition, refraining from enforcing the forum selection and choice of law clauses undercuts the fundamental principle of freedom of contract. Specifically, such a holding would undermine contractual relationships between California businesses and businesses in other states. Affording California citizens effective class action remedies is important, and Van Slyke does provide a basis for concluding that that policy is contravened where big banks take advantage of unsophisticated individual consumers with oppressive adhesion contracts and consequently refusing to enforce a given forum

---

[5] Because enforcing the forum selection and choice of law clauses does not contravene a strong California public policy, the Court need not address which state has a materially greater interest in the litigation. Similarly, having decided in Hilti's favor under forum non conveniens, the Court need not address Hilti's alternate request to strike S&J's demand for jury trial and declines to do so.

selection or choice of law clause.  But where a relatively sophisticated entity, even if it is a small one, is involved in arms-length contractual negotiations, it is not the job of the courts, or the government for that matter, to rescue the entity when the terms it contracted for later turn out to be unfavorable.

**CONCLUSION**

For all the foregoing reasons, Hilti's Motion to Dismiss (ECF No. 49) is GRANTED, and the instant lawsuit is dismissed, without prejudice. The matter having now been concluded in this Court, the Clerk is directed to close the file.

IT IS SO ORDERED.

Dated:  March 22, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE